UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


MILLEDGE A. HART, III, ET AL., )
 )
            Plaintiffs, )
 )            CIVIL ACTION NO.
VS. )
 )            3:18-CV-2178-G
TUFENKIAN ARTISAN CARPETS, )
d/b/a TUFENKIAN CARPETS DALLAS, )
LLC, )
 )
            Defendant. )


## MEMORANDUM OPINION AND ORDER

Before the court is the defendant Tufenkian Carpet Dallas LLC's

("Tufenkian") partial motion to dismiss the plaintiffs' Deceptive Trade Practices Act

claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

*See* Defendant's Motion to Dismiss and Answer to Plaintiffs' Second Amended

Complaint at 1 (docket entry 15); Defendant's Second Motion to Dismiss (docket

entry 19).  For the reasons discussed below, the motion is **DENIED**.

## I.  BACKGROUND

### A.  Factual Background

The plaintiffs Milledge A. Hart, III and Linda W. Hart ("The plaintiffs" or

"The Harts") are individual citizens who reside in Texas.  Exhibit C of Defendant's

Notice of Removal at 1 (docket entry 1-3). The defendant Tufenkian is a limited liability company based in New York City whose sole member, James Tufenkian, resides in New York City, New York. Defendant's Notice of Removal at 2 (docket entry 1).

Sometime in 2017, the Harts decided to remodel their home. Plaintiffs' Second Amended Complaint at 2 (docket entry 14). The Harts sought to purchase new carpets for the remodel and in the summer and fall of 2017 the Harts and their representatives examined rug samples at Tufenkian's showroom in Dallas, the Harts' Dallas office, and the home where the rugs were to be installed. *Id*. In early October of 2017, the Harts' representative, Joseph Toliver, explained to Tory Sommerfeldt, a Tufenkian employee, that the Harts required the rugs to be delivered no later than April 1, 2018. *Id*. at 2-3; Defendant's Motion to Dismiss and Answer to Plaintiffs' Second Amended Complaint at 2. The Harts further allege that Toliver told Sommerfeldt that the Harts' remodeling plan was centered entirely on the rugs and that the Harts would only order the rugs if the rugs could be guaranteed in terms of the patterns, colors, textures, quality, and delivery time. Plaintiffs' Second Amended Complaint at 2-3.

According to the Harts, after Toliver communicated the Harts' desires Sommerfeldt represented that if the Harts purchased Tufenkian rugs, the showroom samples viewed by the Harts would be sent to the factory to ensure that the rugs

produced for the Harts would match the showroom samples. *Id*. at 3. The Harts also maintain that Sommerfeldt told Marco French, another representative of the Harts, that the dye lots used in making the rugs would match the sample rugs previously viewed by the Harts. *Id*. The Harts claim that they ordered the rugs from Tufenkian relying on Sommerfeldt's representations that the patterns, colors, texture, and quality demonstrated by the showroom samples would match the rugs the Harts would receive. *Id*.

To place the orders, the Harts and Tufenkian entered into a lengthy contract negotiation process in which both the Harts and Tufenkian made changes to the quotation contract. *Id*.; Defendant's Motion to Dismiss and Answer to Plaintiffs' Second Amended Complaint at 3. The Harts allege that during the contract negotiations French told Sommerfeldt that the Harts would flatly reject any contract that did not require strike offs, which are production samples for a customer to review and approve prior to the full production. Plaintiffs' Second Amended Complaint at 3. Eventually, the Harts and Sommerfeldt, on behalf of Tufenkian, signed a quotation contract which the Harts allege included a provision requiring Tufenkian to provide the Harts with strike offs that the Harts were to approve prior to full production. *Id*. at 3-4; Defendant's Motion to Dismiss and Answer to Plaintiffs' Second Amended Complaint at 3. The quotation contract was for the purchase of seven carpets from Tufenkian totaling $261,490.00 and consisting of the

following carpets: (1) Moonscape Malachite 42.5" x 67.5"; (2) Moonscape Malachite 9'8" x 14'9"; (3) Sierra Red 3'9" x 16'17"; (4) Ven Tides 16'2" x 23'4"; (5) Luminance Custom 13'7" x 16'6"; (6) Jackson Firewood 2' x 3'; and (7) Nouvelle Spectrum 4'8" x 6'7". Exhibit A of Defendant's Motion to Dismiss and Answer to Plaintiffs' Answer Second Amended Complaint ("The Quotation Contract") (docket entry 15-1) at 1-9.

At the same time the quotation contract was executed and delivered, the Harts paid Tufenkian more than $130,000.00 by check as a deposit on the rugs. Plaintiffs' Second Amended Complaint at 4; Defendant's Motion to Dismiss and Answer to Plaintiffs' Second Amended Complaint at 3. The Harts' check stated that payment was being made in reliance on the guarantee that the rugs would be delivered by April 1, 2018. Plaintiffs' Second Amended Complaint at 4; Defendant's Motion to Dismiss and Answer to Plaintiffs' Second Amended Complaint at 3. Sommerfeldt guaranteed the same in writing. Plaintiffs' Second Amended Complaint at 4; Defendant's Motion to Dismiss and Answer to Plaintiffs' Second Amended Complaint at 3. The Harts also maintain that the check specifically stated that payment was made in reliance on the other guarantees allegedly made by Sommerfeldt and Tufenkian, that the patterns, colors, texture, and quality demonstrated by the showroom samples would match the rugs ordered by the Harts. Plaintiffs' Second Amended Complaint at 4. After the Harts ordered the rugs, the

Harts placed purchase orders for items related to the rest of their remodeling plan, all of which were based around the rugs. *Id*.

In December 2017 the Harts maintain that they received the strike offs they had previously requested. *Id*. The Harts allege that upon receiving the strike offs it was clear that two of the rugs they had ordered, the Ven Tides and Sierra Red, were not the same patterns, colors, texture, or quality as the showroom samples they had previously viewed. *Id*. The Harts claim that the strike offs were of a lesser quality, had different loop length and textures, were different colors, and were not even the same pattern as the samples of the Ven Tides and Sierra Red they had viewed. *Id*. Consequently, the Harts rejected the strike offs due to the differences between the strike offs and the showroom samples of the Ven Tides and Sierra Red rugs. *Id*. The Harts further allege that after receiving the strike offs, Tufenkian took the position that it was not required to provide the Harts with strike offs for prior approval. *Id*. Tufenkian admits that the quotation contract required that strike offs be provided to the Harts but denies that the Harts' approval of the strike offs was necessary prior to full production. Defendant's Motion to Dismiss and Answer to Plaintiffs' Second Amended Complaint at 3. The Harts, on the other hand, maintain that the quotation contract required the Harts to approve the strike offs prior to full production, that Tufenkian's website provided the same, and that prior approval of

strike offs is consistent with how those in the industry understand strike offs. Plaintiffs' Second Amended Complaint at 4-5.

Due to the discrepancies between the strike offs and the showroom samples, the Harts demanded that Tufenkian retrieve the showroom samples from the factory to compare them with the strike offs. *Id*. at 5; Defendant's Motion to Dismiss and Answer to Plaintiffs' Second Amended Complaint at 3. Tufenkian maintains that it did as the Harts requested. Defendants Motion to Dismiss and Answer to the Plaintiffs' Second Amended Complaint at 3. Nevertheless, the Harts claim that Tufenkian confessed it could not find the samples because the samples were never sent to the factory, despite Sommerfeldt's alleged representation that the dye lots of the ordered rugs would match the samples. Plaintiffs' Second Amended Complaint at 5. The Harts also aver that when Tufenkian finally located the showroom samples, it was clear that the strike offs for the Ven Tides and Sierra Red rugs were completely different than the samples. *Id*. In fact, the Harts claim Tufenkian recognized that the strike off for the Ven Tides rug was so varied from the showroom sample that it could cause the Harts concern. *Id*.

In response to the Harts' complaints regarding the strike offs, Tufenkian offered to make new Ven Tides and Sierra Red carpets to comply with the Harts' specifications. *Id.*; Defendant's Motion to Dismiss and Answer to Plaintiffs' Second Amended Complaint at 3. Tufenkian informed the Harts that making new carpets

would require additional time for production beyond the critical April 1, 2018 deadline previously agreed to by both parties. Plaintiffs' Second Amended Complaint at 5; Defendant's Motion to Dismiss and Answer to Plaintiffs' Second Amended Complaint at 3-4. Due to concerns that the other rugs they had ordered would not match the showroom samples they had viewed, the Harts asked for—and Tufenkian agreed to—an extension of the April 1, 2018 delivery deadline so that the Harts could first view the rugs they had ordered in Tufenkian's Dallas showroom. Plaintiffs' Second Amended Complaint at 6; Defendant's Motion to Dismiss and Answer to Plaintiffs' Second Amended Complaint at 4.

On April 17, 2018, the Harts and their representatives met with Tufenkian's attorney at Tufenkian's Dallas showroom to review the rugs the Harts ordered. Plaintiffs' Second Amended Complaint at 6; Defendant's Motion to Dismiss and Answer to Plaintiffs' Second Amended Complaint at 4. While Tufenkian maintains that the rugs shown at the April 17 meeting complied with the quotation contract, the Harts claim that the rugs did not match the promised specifications and that Tufenkian failed to live up to its promises. Defendant's Motion to Dismiss Answer to Plaintiffs' Second Amended Complaint at 4; Plaintiffs' Second Amended Complaint at 6. Specifically, the Harts maintain that: (1) the full Ven Tides rug was not the same quality, texture, or color as the showroom sample; (2) the Sierra Red rug had a very limited amount of red, was not the same quality, texture, or color as

the sample, and that Tufenkian recommended that the Harts look at the back of the Sierra Red rug to see red; (3) the two Moonscape Malachite rugs did not match the rendering, nor were they the same quality or texture as the showroom sample; (4) the Luminance rug did not match Tufenkian's rendering and was not the quality that Tufenkian represented it to be, as it had frayed edges, loose threads, and appeared to be woven on different looms; (5) the Nouvelle rug did not match Tufenkian's rendering and was not the quality Tufenkian represented it to be. Plaintiffs' Second Amended Complaint at 6-13. The Harts were not shown the Firewood rug and are unaware of its patterns, colors, textures, or quality, but argue that because the remodeling plan was created around all the rugs, the firewood rug would not work for the remodel by itself. *Id*. at 13. Ultimately, due to Tufenkian's alleged breach of contract and failure to live up to its promises, the Harts rejected the rugs and refused to take delivery. *Id*. at 14; Defendant's Motion to Dismiss Answer to Plaintiffs' Second Amended Complaint at 4.

## B. Procedural History

The Harts originally filed this suit against Tufenkian in the 95th Judicial District Court of Dallas County, on June 1, 2018. Exhibit B of Defendant's Notice of Removal at 2-3 (docket entry 1-2). In their original state court petition, the Harts asserted two causes of action—a claim of breach of contract and a claim of promissory estoppel. Exhibit C of Defendant's Notice of Removal at 6-7. In July of

2018, before Tufenkian answered the Hart's original petition, the Harts filed their first amended petition. Exhibit B of Defendant's Notice of Removal at 2-3; Exhibit F of Defendant's Notice of Removal at 1 (docket entry 1-6). The Harts' first amended petition included the same factual allegations as their first petition but added a claim that Tufenkian's conduct constituted a breach of the Texas Deceptive Trade Practices Act ("DTPA"). *Compare* Exhibit F of Defendant's Notice of Removal *with* Exhibit C of Defendant's Notice of Removal.

On August 17, 2018, Tufenkian filed its notice of removal and properly removed this case from the 95th Judicial District Court of Dallas County to this court on the basis of diversity of citizenship jurisdiction pursuant to 28 U.S.C. §§ 1441 and 1446. Notice of Removal at 1-3. On August 24, 2018, Tufenkian filed its answer to the Harts' first amended complaint, a counterclaim against the Harts, as well as its first motion to dismiss.[*] *See generally* Defendant's Partial Motion to Dismiss, Answer to Plaintiffs' First Amended Petition, and Counterclaim (docket entry 5). In its first motion to dismiss Tufenkian argued that the Harts' DTPA claim should be dismissed for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant's Brief in Support of its Partial 12(b)(6) Motion to Dismiss (docket entry 6). Specifically, Tufenkian

---

[*] Because Tufenkian's counterclaim is not at issue, this court need not address it in this opinion.

maintained that the Harts had failed to state a DTPA claim because precedent from both the Texas Supreme Court and Fifth Circuit did not allow a party to raise a DTPA claim that sounded in contract alone, and the alleged misrepresentations which formed the basis of the Harts' claim were "nothing more than Tufenkian's representations that it would meet the specifications in the [quotation contract]." *Id*. at 3-5. In addition, Tufenkian argued that the Harts had not stated a DTPA claim upon which relief could be granted because the Harts' alleged injuries were based on the alleged economic loss to the subject of the contract itself, which meant the Harts' DTPA claim sounded in contract alone and should therefore be dismissed. *Id*. at 4-5.

The Harts filed their response to Tufenkian's first motion to dismiss on September 14, 2018. Response to Defendant's First Motion to Dismiss (docket entry 11). On the same date, the Harts filed a motion for leave to file an amended complaint, which this court granted on September 18, 2018. Motion for Leave to File Amended Complaint (docket entry 10); Order Granting Plaintiffs' Motion for Leave to File Amended Complaint (docket entry 13). One day later, on September 19, the Harts filed their second amended complaint, thereby rendering Tufenkian's first motion to dismiss moot. *See generally* Plaintiffs' Second Amended Complaint. In their second amended complaint, the Harts made the same allegations and raised the same three claims against Tufenkian as they did in their first amended petition.

*Compare* Plaintiffs' Second Amended Complaint *with* Plaintiffs' First Amended Petition, Exhibit F of Defendant's Notice of Removal (docket entry 1-6).

Tufenkian filed its answer to the Harts' second amended complaint on October 3, 2018. Defendant's Motion to Dismiss and Answer to Plaintiffs' Second Amended Complaint at 1. In addition, due to the substantially unchanged nature of the Harts' second amended complaint, Tufenkian filed a second motion to dismiss the Harts' DTPA claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.*; Defendant's Brief in Support of its Second Partial 12(b)(6) Motion to Dismiss ("Defendant's Brief") at 1 (docket entry 16). Much like Tufenkian's first motion to dismiss, Tufenkian's second motion to dismiss maintains that the Harts' DTPA claim should be dismissed as it is only a restatement of the Harts' breach of contract claim, since: (1) the misrepresentations which formed the basis of the Harts' DTPA claim were "nothing more than Tufenkian's representations that it would manufacture rugs that met the specifications in the [quotation contract,]" which meant the Harts' claim sounded in contract alone; and (2) the Harts' alleged injury is only the economic loss to the subject of the contract itself, in addition to consequential damages from the alleged breach, meaning the Harts' claim sounded in contract alone. *Id.* at 3-6.

On October 24, 2018 the Harts filed their response to Tufenkian's second motion to dismiss. Response to Defendant's Second Motion to Dismiss ("Response")

- 11 -

at 1 (docket entry 17). In their response, the Harts agree that both Fifth Circuit and Texas Supreme Court precedent have established that "an allegation of a mere breach of contract, without more, does not constitute a 'false, misleading, or deceptive act' in violation of the DTPA." Response at 3 (quoting *Prestige Oysters, Inc. v. Unisource Worldwide, Inc.*, 161 F. Supp. 3d 479, 481 (S.D. Tex. 2015) (citation omitted)). Nevertheless, the Harts maintain that by way of their second amended complaint, they have pled more than just breach of contract. *Id*. Specifically, the Harts' maintain that their breach of contract claim is based on Tufenkian's failure to comply with its contractual promises to deliver rugs of a certain pattern, color, quality, and texture, whereas the their DTPA claim is based on Tufenkian's misrepresentations about the rugs that then convinced the Harts to purchase other items for their remodeling plan based entirely on the rugs. *Id*. at 3-4.

In addition, the Harts argue that based on precedent from this district they have pled a plausible DTPA claim, since they allege not only that Tufenkian breached its contract, but that Tufenkian never intended to fulfil the contract in the first place. *Id*. at 5 (citing *Shakeri v. ADT Security Services*, No. 3:13-CV-2852-D, 2014 WL 5780955, at *5-6 (N.D. Tex. Nov. 6, 2014) (Fitzwater, Chief J.)). Furthermore, in response to Tufenkian's argument that the Harts' alleged injury is nothing more than the economic loss for Tufenkian's alleged breach of contract, the Harts specify that in their DTPA claim they seek damages that include items the Harts purchased for their

remodeling plan in reliance on Tufenkian's alleged misrepresentations. *Id*. at 6. Finally, the Harts assert that because DTPA claims are fact driven, this court should not dismiss the Harts' DTPA claim at this stage and should instead determine whether Tufenkian's alleged breach of contract amounts to a misrepresentation under the DTPA after the parties have conducted discovery. *Id.*

On November 7, 2018, Tufenkian filed its reply. Reply at 1 (docket entry 18). In its reply, Tufenkian reiterates that the Harts' DTPA claim should be dismissed since it is nothing more than a breach of contract claim. *Id*. at 1-3. Tufenkian's motion to dismiss is now ripe for consideration.

## II. ANALYSIS

### A. Legal Standard

"To survive a Rule 12(B)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotations marks, and brackets omitted). "Factual allegations must

be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id*. (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id*. The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id*. at 678. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

relief.'" *Id.* at 679 (alteration in original) (quoting Federal Rule of Civil Procedure 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against the defendant "across the line from conceivable to plausible." See *id.* at 679, 683.

## B. Application

The DTPA grants consumers a cause of action for damages caused by another's false, misleading, or deceptive acts or practices. *See* TEXAS BUSINESS & COMMERCE CODE § 17.50(a). "To allege a DTPA claim, a consumer must plead that the defendant violated a specific provision of the DTPA, that the consumer detrimentally relied of the said act or practice, and that the violation was a producing cause of the consumer's injury." *Collections Fine Jewelry, Inc. v. Stanley Convergent Security Solutions, Inc.*, No. 3:11-CV-3230-N, 2012 WL 12884572, at *3 (N.D. Tex. Aug. 29, 2012) (Godbey, J.) (quoting TEXAS BUSINESS & COMMERCE CODE § 17.50(a)).

Here, Tufenkian argues that this court should dismiss the Harts' DTPA claim because it is nothing more than a restatement of their breach of contract claim. Defendant's Brief at 3. Precedent makes clear that "[a]n allegation of mere breach of contract, without more, does not constitute a false, misleading, or deceptive at in violation of the DTPA." *Ashford Development, Inc. v. USlife Real Estate Services Co.*, 661 S.W. 2d 933, 935 (Tex. 1983); *Helms v. Southwestern Bell Telephone Co.*, 794 F.2d 188,

190-92 (5th Cir. 1986) (dismissing DTPA claim arising out of errors in published yellow pages ad because alleged misrepresentation was nothing more than the defendant's failure to perform its contractual promise).  Courts, however, "have struggled to clarify the boundary between contract claims and other causes of action." *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex. 1996).  "The Supreme Court of Texas has explained that the relevant inquiry involves an examination of 'both the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the plaintiff.'" *Shakeri*, 2014 WL 5780955 at *5 (quoting *Crawford*, 917 S.W.2d at 13).  When the injury to the party raising the DTPA claim "is only the economic loss to the subject of a contract itself, the action sounds in contract alone."  *Dewayne Rogers Loggings, Inc. v. Propac Industries, Ltd.*, 299 S.W.3d 374, 387 (Tex. 1998).  But, "when the plaintiff alleges not only a breach of contract, but also that the other party "never intended" to fulfill the contract in the first place[,]" the plaintiff may maintain claims for both breach of contract and a violation of the DTPA.  *Shakeri*, 2014 WL 5780955 at *5 (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006)).  Furthermore, "where a plaintiff alleges that the defendant represented that he or she would provide a certain good or service and the defendant then fails to provide that good or service, the plaintiff successfully alleges more than a mere breach of contract

claim." *Collections Fine Jewelry, Inc.*, 2012 WL 12884572, at *3 (citing *Chapa*, 212 S.W.3d at 305).

After reviewing both parties' arguments and pleadings, this court concludes that the Harts have successfully alleged more than a breach of contract claim.

First, this court concludes that the Harts have successfully pled their DTPA claim because the Harts have alleged that Tufenkian "represented that [it] would provide a certain good or service and . . . then failed to provide that good or service[.]" *Collections Fine Jewelry, Inc.*, 2012 WL 12884572, at *3. Specifically, in the Harts' second amended complaint the Harts not only allege that Tufenkian represented that it would provide the Harts with rugs similar in quality, pattern, color, and texture to the rugs viewed by the Harts in Tufenkian's Dallas showroom, but that Tufenkian failed to provide the aforementioned rugs. Plaintiffs' Second Amended Complaint at 15-16. Accordingly, this court finds that because the Harts have alleged that Tufenkian represented that it would provide a good and then failed to provide it, the Harts have successfully pled a DTPA claim in line with the court's decision in *Collections Fine Jewelry, Inc.*.

In fact, the Harts' DTPA claim and related allegations are quite similar to those of the plaintiff in *Collections Fine Jewlery, Inc.*. There, the defendant contracted with the plaintiff to provide the plaintiff with a commercial alarm system that the defendant would service. *Collections Fine Jewelry, Inc.*, 2012 WL 12884572 at *1.

After the plaintiff's jewelry store was robbed, the plaintiff sued the defendant for breach of contract as well as for violations of the DTPA, among other things. *Id*. Specifically, the plaintiff alleged that the defendant violated the DTPA by: (1) misrepresenting that the alarm the plaintiff purchased met certain specifications and would perform according to those specifications; (2) misrepresenting that the alarm purchased was operational when it was not; and (3) breaching an implied warranty of good and workmanlike performance of services. *Id*. at *3. After reviewing the plaintiff's allegations, Judge Godbey concluded that the plaintiff successfully pled a DTPA claim because the plaintiff's allegations concerned misrepresentations about a product. *Id*. Here, the Harts' allegations concern misrepresentations about a product, too—the seven rugs the Harts' ordered—rather than merely a claim that Tufenkian failed to perform under the contract. Accordingly, this court concludes similarly to Judge Godbey in *Collections Fine Jewelry, Inc.*, and finds that the Harts have pled more than just a breach of contract claim.

Although Tufenkian argues that the Harts' DTPA claim is like the DTPA claim in *Crawford v. Ace Sign, Inc.*, this court finds Tufenkian's argument unpersuasive. In *Crawford*, the Texas Supreme Court determined that the plaintiff's DTPA claim was nothing more than a breach of contract claim because it was the defendant's breach of contract that actually caused the plaintiff injury, which meant the plaintiff's claim was governed by contract law and not the DTPA. *Crawford*, 917 S.W.2d at 14-15.

Specifically, the court in *Crawford* determined that the essence of the plaintiff's allegations was that: "(1) the defendants represented that they would perform under the contract, and (2) nonperformance means that they misrepresented that they would perform under the contract." *Id.* at 14. The Texas Supreme Court determined that if it were to accept that these allegations were sufficient to plead a DTPA claim, every breach of contract claim would be converted into a DTPA claim. *Id.* Accordingly, the Texas Supreme Court denied the existence of the plaintiff's DTPA claim. *Id.* Here, unlike *Crawford*, the Harts' alleged injuries stem not only from Tufenkian's alleged breach of contract, but also Tufenkian's alleged misrepresentations about the rugs similarity to the showroom samples and about Harts' prior approval of the strike offs. This is because the Harts allege that these misrepresentations led the Harts to enter into the contract and to place purchase orders related to the rest of the Harts' remodeling plan. *See* Plaintiffs' Second Amended Complaint at 3-4. Accordingly, this court finds that the essence of the Harts' DTPA claim is unlike the claim in *Crawford*.

Second, this court concludes that the Harts have successfully pled their DTPA claim because the Harts allege that Tufenkian "never intended to fulfill the contract in the first place." *Shakeri*, 2014 WL 5780955, at *5-6. Specifically, the Harts claim that Tufenkian never intended to perform under the contract because, despite representing that it would do so, Tufenkian: (1) failed to send the showroom samples

viewed by the Harts to the factory to ensure that the rugs ordered would match the sample; and (2) failed to ensure that the dye lots used to make the rugs matched the samples.  Based upon these allegations, this court finds that the Harts have stated a plausible claim for fraudulent inducement under the DTPA.  See *Chapa*, 212 S.W.3d at 304-5 (concluding that a plaintiff was entitled to assert DTPA claims in addition to a claim for breach of contract where the plaintiff alleged, and provided proof that, the defendant represented it would deliver one product to the plaintiff, but never intended to do so).

In its reply, Tufenkian argues that its alleged misrepresentations that it would send showroom samples to the factory and that it would match the dye lots cannot form the basis of the Harts' DTPA claim because the quotation agreement between Tufenkian and the Harts expressly provided that "slight variations in color, tone, and design may occur."  Reply at 2.  Because the contract contains a provision expressly contradicting the representations the Harts allege Tufenkian made, Tufenkian argues that any dispute regarding the alleged misrepresentations "remains nothing more than a contractual claim."  *Id*.  This court disagrees, however.  "[A] party may bring a fraudulent inducement claim even if the terms of the promise are later subsumed into the contract.  In all such cases, the liability of the defendant on the contract does not absolve it from liability in tort damages too."  *Chappa*, 212 S.W.3d at 304-05 (internal footnotes omitted).

Finally, this court finds that the Harts' allegation that that Tufenkian "caused confusion and misunderstanding about the approval of the strike offs prior to full production of the rugs" states a plausible DTPA claim under TEXAS BUSINESS & COMMERCE CODE § 17.46(b)(2). Tufenkian argues that this allegation fails to support a DTPA claim, since the Harts' DTPA claim, "in its entirety, is based only on the alleged economic loss to the subject of the contract itself." Defendant's Brief at 5. This court disagrees. As the Harts' point out in their response brief, they seek more than just economic losses for Tufenkian's alleged breach of contract in their DTPA claim. Response at 6. Unlike their breach of contract claim—where the Harts seek contractual economic damages for the rugs they purchased that were not delivered—in their DTPA claim, the Harts also seek damages for items related to the Harts' remodeling plan that the Harts purchased in reliance on the defendant's misrepresentations: (1) concerning the quality of the rugs, and (2) concerning the Harts' ability to approve the strike offs before Tufenkian began full production. *Id*.

Ultimately, this court is not convinced by Tufenkian's arguments, nor can this court conclude that the Harts' allegations consist of nothing more than a breach of contract claim. Therefore, this court cannot grant the relief sought by Tufenkian. Accordingly, this court denies Tufenkian's second partial motion to dismiss.

### III.  CONCLUSION

For the reasons stated above, Tufenkian's second partial motion to dismiss the

Harts' DTPA claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is

**DENIED**.

**SO ORDERED.**

January 18, 2019.

_A. Joe Fish_

A. JOE FISH
**Senior United States District Judge**